Slip Op. 20-113

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| SGS SPORTS, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | Before: Jennifer Choe-Groves, Judge <br><br> Court No. 18-00128 |

## OPINION

[The court finds that U.S. Customs and Border Protection correctly classified the subject imports, and that Plaintiff's subject imports are not entitled to duty-free treatment. Accordingly, the court denies Plaintiff's motion for summary judgment and grants Defendant's cross-motion for summary judgment.]

Dated: August 7, 2020

John M. Peterson and Patrick B. Klein, Neville Peterson, LLP, of New York, N.Y., for Plaintiff SGS Sports, Inc. With them on the briefs was Richard F. O'Neill.

Monica P. Triana, Trial Attorney, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, N.Y., for Defendant United States. With her on the briefs were Joseph H. Hunt, Assistant Attorney General, Jeanne E. Davidson, Director, Justin R. Miller, Attorney-in-Charge, International Trade Field Office, and Aimee Lee, Assistant Director. Of counsel on the briefs was Sheryl French, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection, of New York, N.Y.

Choe-Groves, Judge: This action addresses whether swimwear and related accessories are reimported articles that were "exported under lease or similar use agreements" and are therefore entitled to duty-free treatment under subheading 9801.00.20 of the Harmonized Tariff Schedule of the United States ("HTSUS"). Before the court are cross-motions for summary judgment. Pl.'s Mot. for Summ. J., ECF No. 26; Mem. Of Points and Authorities In Supp. Of

Pl.'s Mot. for Summ. J. ("Pl.'s Mem."), ECF No. 26-2; Def.'s Cross-Mot. for Summ. J., ECF No. 30 at 2–3; Def.'s Mem. Of Law In Opp'n to Pl.'s Mot. for Summ. J. and in Supp. Of Its Cross-Mot. for Summ. J. ("Def.'s Mem."), ECF No. 30 at 4–36; Pl.'s Opp'n to Def.'s Cross-Mot. for Summ. J. and Reply in Supp. Of Its Mot. for Summ. J. ("Pl.'s Opp'n and Reply"), ECF No. 32; Def.'s Reply Mem. in Further Supp. Of Gov.'s Cross-Mot. for Summ. J. ("Def.'s Reply"), ECF Nos. 33, 34. SGS Sports, Inc. ("SGS" or "Plaintiff") brings this action to contest the denial of its administrative protest by U.S. Customs and Border Protection ("Customs").

The court examines in this opinion whether Plaintiff's subject merchandise meet the requirements for duty-free treatment under HTSUS subheading 9801.00.20, which states:

> 9801.00.20.00 Articles, previously imported, with respect to which the duty was paid upon such previous importation . . . , if (1) reimported, without having been advanced in value or improved in condition by any process of manufacture or other means while abroad, after having been exported under lease or similar use agreements, and (2) reimported by or for the account of the person who imported it into, and exported it from, the United States.

HTSUS subheading 9801.00.20.

For the reasons discussed below, the court denies Plaintiff's motion for summary judgment and grants Defendant's cross-motion for summary judgment.

## BACKGROUND

### A. Material Facts Not in Dispute

The party moving for summary judgment must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." United States Court of International Trade ("USCIT") Rule 56(a). The parties filed cross-motions for summary judgment and submitted separate statements of undisputed material facts with their respective motions and responses to the opposing party's statements. See Pl.'s R. 56.3 Statement of Material Facts Not in Dispute, ECF No. 26-3 ("Pl.'s SMF"); Def.'s Resp. to Pl. SGS Sports,

Inc.'s R. 56.3 Statement of Material Facts, ECF No. 30-3 ("Def.'s Resp. to Pl.'s SMF"); Def.'s Statement of Undisputed Material Facts, ECF No. 30-2 ("Def.'s SMF"); Pl.'s Resp. to Def.'s R. 56.3 Statement of Material Facts Not in Dispute, ECF No. 32-2 ("Pl.'s Resp. to Def.'s SMF"). Upon review of the parties' statements of material facts and supporting exhibits, the court finds the following undisputed material facts.

SGS was incorporated in 1988 and is a Canada-based importer of swimwear. Pl.'s SMF ¶ 1; Def.'s Resp. to Pl.'s SMF ¶ 1. 147483 Canada Inc. ("147483") is a company wholly-owned by Steven Gellis ("Gellis") and was incorporated in 1985. Pl.'s SMF ¶ 2; Def.'s Resp. to Pl.'s SMF ¶ 2. Gellis serves as President of both SGS and 147483. Pl.'s SMF ¶ 1–2; Def.'s Resp. to Pl.'s SMF ¶ 1–2. Gellis is the owner and sole officer of 147483. Def.'s SMF ¶ 3; Pl.'s Resp. to Def.'s SMF ¶ 3. Gellis is the sole officer of SGS. Def.'s SMF ¶ 8; Pl.'s Resp. to Def.'s SMF ¶ 8. Gellis possessed ultimate control of SGS as of 2013, and all officer-assigned decisions vest in Gellis. Pl.'s SMF ¶ 1; Def.'s SMF ¶¶ 8, 9, 104–15; Def.'s Resp. to Pl.'s SMF ¶ 1; Pl.'s Resp. to Def.'s SMF ¶¶ 8, 9, 104–15.

In 2005, SGS and 147483 executed a Warehousing Agreement setting forth specific responsibilities to be performed by 147483, including managing inventory. Pl.'s SMF ¶ 10; Def.'s SMF ¶ 42; Def.'s Resp. to Pl.'s SMF ¶ 10; Pl.'s Resp. to Def.'s SMF ¶ 42. Gellis signed the Warehousing Agreement on behalf of both SGS and 147483. Def.'s SMF ¶¶ 42, 47; Pl.'s Resp. to Def.'s SMF ¶¶ 42, 47. SGS and 147483 are co-located in the same building. Pl.'s SMF ¶¶ 9–10; Def.'s Resp. to Pl.'s SMF ¶¶ 9–10. Before 2005, SGS imported merchandise directly from foreign manufacturers to SGS' premises in Canada. Def.'s SMF ¶ 30; Pl.'s Resp. to Def.'s SMF ¶ 30. SGS shifted its business model to import foreign-supplied merchandise to the United States, which were exported immediately, unaltered, to SGS' warehouse in Canada. Def.'s SMF

¶ 37; Pl.'s Resp. to Def.'s SMF ¶ 37.  The Duty Relief Ledger contains an internal shipment number, a corresponding U.S. entry number, the B3 consumption entry number, and the quantity of each item (by style and color).  Def.'s SMF ¶ 88; Pl.'s Resp. to Def.'s SMF ¶ 88.

### B. Procedural History

SGS entered the subject merchandise pursuant to HTSUS subheading 9801.00.20.  Pl.'s SMF ¶ 7; Def.'s Resp. to Pl.'s SMF ¶ 7.  Customs liquidated the entries, reclassified the merchandise, and denied Plaintiff's claim for duty-free treatment under HTSUS subheading 9801.00.20.  Pl.'s SMF ¶ 8; Def.'s Resp. to Pl.'s SMF ¶ 8.  Thereafter, SGS filed a timely protest challenging Customs' classification determination.  Pl.'s SMF ¶ 8;  Def.'s Resp. to Pl.'s SMF ¶ 8.  When denying SGS' protest, Customs stated that the subject merchandise had not been properly exported under a lease or similar use agreement as required under the duty-free HTSUS subheading 9801.00.20.  See HQ H276403 (Dec. 12, 2017).  SGS filed suit challenging the denial of its protest.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(a).

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  USCIT R. 56(a).  To raise a genuine issue of material fact, a party cannot rest upon mere allegations or denials and must point to sufficient supporting evidence for the claimed factual dispute to require resolution of the differing versions of the truth at trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986); Processed Plastics Co. v. United States, 473 F.3d 1164, 1170 (Fed. Cir. 2006).

A two-step process guides the court in determining the correct classification of merchandise. First, the court ascertains the proper meaning of the terms in the tariff provision. See Schlumberger Tech. Corp. v. United States, 845 F.3d 1158, 1162 (Fed. Cir. 2017) (citing Sigma-Tau HealthScience, Inc. v. United States, 838 F.3d 1272, 1276 (Fed. Cir. 2016)). Second, the court determines whether the subject merchandise fall within the parameters of the tariff provision. See id. The former is a question of law and the latter is a question of fact. See id. "[W]hen there is no dispute as to the nature of the merchandise, then the two-step classification analysis 'collapses entirely into a question of law.'" Link Snacks, Inc. v. United States, 742 F.3d 962, 965–66 (Fed. Cir. 2014) (quoting Cummins Inc. v. United States, 454 F.3d 1361, 1363 (Fed. Cir. 2006)).

The court reviews classification cases *de novo*. See 28 U.S.C. § 2640(a)(1). The court has "an independent responsibility to decide the legal issue of the proper meaning and scope of HTSUS terms." Warner-Lambert Co. v. United States, 407 F.3d 1207, 1209 (Fed. Cir. 2005) (citation omitted). Thus, the court must determine "whether the government's classification is correct, both independently and in comparison with the importer's alternative." Jarvis Clark Co. v. United States, 733 F.2d 873, 878 (Fed. Cir. 1984).

**ANALYSIS**

I.   **Legal Framework**

In construing the terms of the HTSUS headings, "[a] court may rely upon its own understanding of the terms used and may consult lexicographic and scientific authorities, dictionaries, and other reliable information sources." Carl Zeiss, Inc. v. United States, 195 F.3d 1375, 1379 (Fed. Cir. 1999) (citing Baxter Healthcare Corp. v. United States, 182 F.3d 1333, 1337–38 (Fed. Cir. 1999). The court may also consult the Harmonized Commodity Description

and Coding System's Explanatory Notes ("Explanatory Notes"), which "are not legally binding or dispositive," Kahrs Int'l., Inc. v. United States, 713 F.3d 640, 645 (Fed. Cir. 2013), but "provide a commentary on the scope of each heading of the Harmonized System" and are "generally indicative of proper interpretation of the various provisions." H.R. Rep. No. 100–576, 549 (1988), reprinted in 1988 U.S.C.C.A.N. 1547, 1582; see also E.T. Horn Co. v. United States, 367 F.3d 1326, 1329 (Fed. Cir. 2004). Tariff terms are defined according to the language of the headings, the relevant section and chapter notes, the Explanatory Notes, available lexicographic sources, and other reliable sources of information.

  II.  **Analysis of The Terms of HTSUS Subheading 9801.00.20**

The court first ascertains the proper meaning and scope of HTSUS subheading 9801.00.20. See Bausch & Lomb, Inc. v. United States, 148 F.3d 1363, 1365 (Fed. Cir. 1998). HTSUS subheading 9801.00.20 covers reimported merchandise: (1) upon which duty was paid at the time of previous importation; (2) that has not been advanced in value or improved in condition by any process of manufacture or other means while abroad; (3) that was exported under a lease or similar use agreement; and (4) that is reimported by or for the account of the person who imported the merchandise into, and exported it from, the United States. HTSUS subheading 9801.00.20; Skaraborg Invest USA, Inc. v. United States, 22 CIT 413, 417 (1998).

Generally, an importer must pay a duty on previously imported merchandise that were exported and then re-imported into the United States. 19 C.F.R. § 141.2. HTSUS subheading 9801.00.20 provides an exception to this general rule by allowing duty-free treatment if articles were originally imported into the United States and duties were paid, the articles were exported outside the United States, and then reimported back into the United States while meeting certain conditions related to a lease or similar use agreement. The purpose of this provision is to prevent

the imposition of double duties for articles that meet the specific requirements of HTSUS subheading 9801.00.20. Customs shall determine whether to allow for duty-free treatment under HTSUS subheading 9801.00.20, as set forth in the relevant implementing regulation as follows:

> **Entry of reimported articles exported under lease.**
> Free entry shall be accorded under subheading 9801.00.20, Harmonized Tariff Schedule of the United States (HTSUS), whenever it is established to the satisfaction of the Center director that the article for which free entry is claimed was duty paid on a previous importation . . . , is being re-imported without having been advanced in value or improved in condition by any process of manufacture or other means, was exported from the United States under a lease or similar use agreement, and is being reimported by or for the account of the person who imported it into, and exported it from, the United States.

19 C.F.R. § 10.108.

### a. Reimported merchandise with duties paid upon previous importation

The court examines each requirement of HTSUS subheading 9801.00.20 in turn. First, an importer must show that the subject merchandise are "[a]rticles, previously imported, with respect to which the duty was paid upon such previous importation." HTSUS subheading 9801.00.20. The court construes the term "[a]rticles" within the ordinary, plain usage of the term. The terms "previously imported" and "duty . . . paid upon such previous importation" are construed by the court according to the relevant dictionary definitions. "[P]reviously imported" means "to bring from a foreign or external source" and "going before in time or order." Previously, Merriam-Webster's Collegiate Dictionary 984 (11th ed. 2020); imported, id. at 625. "Duty paid" means "a tax on imports" and "a disposal or transfer of (money)." Duty, id. at 388; paid, id. at 910. The court concludes that the tariff terms "[a]rticles, previously imported, with respect to which the duty was paid upon such previous importation" mean that the subject merchandise must have been imported into the United States from a foreign country and the

importer paid a duty to Customs when the merchandise were first imported into the United States.

Plaintiff SGS asserts that the entries at issue in this case were previously imported from China into the United States and duties were paid upon first importation. Pl.'s SMF ¶ 4. To support its claim, SGS cites inventory records that purport to establish the date and place of entry into the United States, as well as the quantity, style, size, and color of the goods being re-imported. Pl.'s Mem. at 8–9 (citing Pl.'s SMF, Exhs. K, P). The Government disputes that the subject merchandise were previously imported and that duties were paid upon first importation into the United States. Def.'s Resp. to Pl.'s SMF ¶ 4. The Government argues also that the exhibits cited by Plaintiff fail to "make a connection between the two U.S. entries" (i.e. the first importation and the re-importation into the United States), noting omissions of relevant information in the exhibits such as the date and place of entry into the United States of the original shipments, the quantity, style, size, and color of the goods being re-imported into the United States, whether the merchandise originally imported were eventually sold to customers in the United States, or whether duties were originally paid on the re-imported entries at issue. Def.'s Mem. at 34–35. Upon examining Exhibits K and P provided by Plaintiff, the court notes that both documents consist of voluminous print outs of tables containing numbers and codes. The court observes that the numbers and codes in Exhibits K and P do not clearly show that the merchandise listed therein were imported to the United States, that duties were paid upon that first importation, that the merchandise were exported from the United States to Canada, that the merchandise were re-imported into the United States, or that the merchandise listed therein are the same articles as the subject entries in this case.

The court concludes that Plaintiff has failed to meet its burden to provide a sufficient showing to establish the existence of an element essential to Plaintiff's case, namely the first factor under HTSUS subheading 9801.00.20 requiring that the subject merchandise were previously imported into the United States and that duties were paid on the subject merchandise at first importation. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) ("Celotex") (Summary judgment should be granted against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."); XY, LLC v. Trans Ova Genetics, 890 F.3d 1282, 1292 (Fed. Cir. 2018) (citing Celotex).

### b. Reimported articles have not been advanced in value

Second, an importer must show that the subject merchandise are articles that have not been "advanced in value or improved in condition . . . while abroad." HTSUS subheading 9801.00.20. The court construes the terms "advanced in value or improved in condition . . . while abroad" by examining dictionary definitions of the relevant terms. "Advanced" means "greatly developed beyond an initial stage." Advanced, Merriam-Webster's Collegiate Dictionary 18 (11th ed. 2020). "Value" means "the monetary worth of something." Value, id. at 1382. "Improved" means "to enhance in value or quality." Improved, id. at 626. "Condition" means "a state of being." Condition, id. at 259. "Abroad" means "beyond the boundaries of one's country." Abroad, id. at 4. The court confirms that the tariff terms "advanced in value or improved in condition . . . while abroad" mean that the subject merchandise have not developed their monetary worth or enhanced their state of being while in the exported country (i.e. Canada in this case).

Plaintiff SGS asserts that the subject merchandise were neither advanced in value nor improved in condition while abroad. Pl.'s SMF ¶ 20. To support its claim, SGS alleges that the subject merchandise were stored in a warehouse and sometimes repackaged. Pl.'s Mem. at 9–11. Defendant disputes Plaintiff's assertion that the subject merchandise were neither advanced in value nor improved in condition while abroad. Def.'s Resp. to Pl.'s SMF ¶ 20. Defendant contends that Plaintiff failed to provide any evidence to prove that SGS exported the merchandise to Canada and that the subject merchandise were not advanced in value or improved in condition. Def.'s Mem. at 35–36; Def.'s Reply at 13. Defendant notes also that because Plaintiff failed to connect the subject entries to show that the first imported merchandise were the same as the reimported subject merchandise, Plaintiff failed to establish that the previously imported merchandise were not advanced in value or improved in condition while in Canada. Def.'s Reply at 13. The court observes that Plaintiff failed to cite any evidence to support its contention that the subject merchandise were not advanced in value or improved in condition while in Canada.

A party moving for summary judgment must make a sufficient showing to establish the existence of an element essential to that party's case. Celotex, 477 U.S. at 322; XY, LLC, 890 F.3d at 1292. Here, Plaintiff failed to provide any proof that the subject merchandise were not advanced in value or improved in condition while in Canada, which is an essential element to proving that Plaintiff's merchandise were entitled to duty-free treatment under HTSUS subheading 9801.00.20. The court concludes, therefore, that Plaintiff has failed to meet its burden on the second requirement of HTSUS subheading 9801.00.20.

### c. Exported under a lease or similar use agreement

Third, the importer must show that the subject merchandise were "exported under [a] lease or similar use agreement[]." HTSUS subheading 9801.00.20. SGS does not argue that its arrangement with 147483 is a lease. See Pl.'s Mem. at 11–12. SGS argues, rather, that its arrangement with 147483 is a bailment agreement that is equivalent to a "similar use agreement." Id.

In construing the tariff terms "exported under [a] . . . similar use agreement[]," the court looks to dictionary definitions to construe the term "similar use agreement." "Similar" is defined as "alike in substance or essentials." Similar, Merriam-Webster's Collegiate Dictionary 1161 (11th ed. 2020). "Use" is defined as "to carry out a purpose or action." Use, id. at 1378. "Agreement" is defined by Black's Law Dictionary as a "mutual understanding between two or more persons about their relative rights and duties regarding past or future performances; a manifestation of mutual assent by two or more persons." Agreement, Black's Law Dictionary (7th ed. 1999). Accordingly, the court construes the term "similar use agreement" under HTSUS subheading 9801.00.20 to mean an understanding between two or more parties expressing a mutual assent to carry out a purpose or action that is alike in substance.

SGS argues that its arrangement is a bailment agreement that equates to a "similar use agreement." See Pl.'s Mem. at 11–12. The court notes at the outset that Plaintiff's characterization of SGS' arrangement with 147483 as a "bailment agreement" presupposes a legal conclusion, and the court does not entertain an analysis of whether there is a bailment agreement in this case. Rather, the court examines whether the undisputed material facts alleged by the movant support a showing of a similar use agreement within the court's understanding of the meaning of the tariff terms.

Under the court's construction of "similar use agreement," Plaintiff must show an understanding between two or more parties expressing a mutual assent to carry out a purpose or action that is alike in substance. Plaintiff contends that SGS maintains an arrangement with 147483 that acts as a similar use agreement, citing to a Warehousing Agreement executed between SGS and 147483. SGS asserts that this Warehousing Agreement demonstrates use of the subject merchandise for the purpose of warehousing by more than one party. Pl.'s SMF ¶¶ 9–15. The parties agree on several facts with respect to whether there is use of the subject merchandise by more than one party. For example:

- The parties agree that SGS and 147483 are co-located in the same building, though Plaintiff and Defendant dispute whether SGS and 147483 act as separate companies. Pl.'s SMF ¶¶ 9–10; Def.'s Resp. to Pl.'s SMF ¶¶ 9–10.

- The parties agree that Gellis is the owner and sole officer of 147483. Def.'s SMF ¶ 3; Pl.'s Resp. to Def.'s SMF ¶ 3.

- The parties agree that Gellis is the sole officer of SGS. Def.'s SMF ¶ 8; Pl.'s Resp. to Def.'s SMF ¶ 8. The parties further agree that Gellis possessed ultimate control of SGS as of 2013, and do not dispute that all officer-assigned decisions vest in Gellis. Pl.'s SMF ¶ 1; Def.'s SMF ¶¶ 8, 9, 104–15; Def.'s Resp. to Pl.'s SMF ¶ 1; Pl.'s Resp. to Def.'s SMF ¶¶ 8, 9, 104–15.

- The parties agree that Gellis signed the Warehousing Agreement on behalf of both SGS and 147483. Def.'s SMF ¶¶ 42, 47; Pl.'s Resp. to Def.'s SMF ¶¶ 42, 47.

The parties dispute numerous material aspects, however, of whether the subject merchandise are used by more than one party. For example:

- Defendant disputes Plaintiff's characterization of the arrangement between SGS and 147483, arguing that the Warehousing Agreement cannot be a similar use agreement because the activities covered under the Warehousing Agreement do not involve the use of merchandise, and because SGS and 147483 are the same entity. Def.'s Resp. to Pl.'s SMF ¶¶ 9–15; Def. Br. at 23–33.

- Plaintiff and Defendant dispute whether SGS and 147483 are the same or separate entities. Pl.'s SMF ¶¶ 3, 10; Def.'s Resp. to Pl.'s SMF ¶¶ 3, 10.

- The parties dispute whether the 147483 company was formed to conduct warehousing operations. Pl.'s SMF ¶ 2; Def.'s Resp. to Pl.'s SMF ¶ 2.

- The parties dispute whether the Warehousing Agreement demonstrates use of the subject merchandise by more than one party. Pl.'s SMF ¶¶ 9–15; Def.'s Resp. to Pl.'s SMF ¶¶ 9–15.

Relevant to the court's consideration of the parties' cross-motions for summary judgment, the court concludes that disputes over genuine issues of material fact exist with respect to questions of whether the subject merchandise were exported to Canada under a similar use agreement, and whether the agreement between SGS and 147483 was between two parties. In any event, because Plaintiff has failed to make a sufficient showing on the first and second factors under HTSUS subheading 9801.00.20 (whether the subject merchandise were reimported with duties paid, and whether the subject merchandise did not advance in value or improve in condition), any genuine issues of material fact with respect to a lease or similar use agreement do not warrant resolution at trial.

### d. Reimported by or for the account of the person who imported it into and exported it from the United States.

The fourth issue is whether the subject merchandise were reimported "by or for the account of the person who imported it into, and exported it from, the United States." HTSUS subheading 9801.00.20. The court construes the terms in the fourth factor to mean that a showing must be made that the subject merchandise were brought back into the United States by the original importer, or for the original importer. In other words, SGS must show that the subject merchandise were originally imported into the United States, exported to another country, and reimported into the United States either by SGS or for SGS.

Plaintiff alleges that "all of the goods in question were imported by SGS, exported by SGS and reimported by SGS." Pl.'s SMF ¶ 19. Defendant disputes this statement, stating that SGS has provided no evidence to support the allegation made in ¶ 19 of Plaintiff's statement of material facts. Def.'s Resp. to Pl.'s SMF ¶ 19. The evidence before the court shows generally that SGS imported goods and subsequently reimported some goods under the terms of the Warehousing Agreement. See Pl.'s SMF Ex. K ("Receiving Journal"); Pl.'s SMF Ex. P ("Duty Relief Ledger"). Defendant asserts that there is no evidence to track the goods leaving the Canadian warehouse back to the original consumption entry number. Def. Br. at 34; Def. Reply at 13. The court observes that Plaintiff's cited evidence does not detail whether the entries at issue in this case are the same merchandise originally imported and exported.

HTSUS requires a showing that "[a]rticles, previously imported," are the subject merchandise at issue. HTSUS subheading 9801.00.20. It is not enough to show that *generally* SGS' business plan provides for import, export, and reimport of swimwear. A showing must be made that the entries identified in the protest were imported, duties were paid, were exported, and reimported. This interpretation is consistent with the implementing regulations, which state

that "[f]ree entry shall be accorded under [HTSUS] subheading 9801.00.20, . . . . [upon a showing] that the article for which free entry is claimed was duty paid on a previous importation . . . ." 19 C.F.R. § 10.108.  Similarly, the court in Skaraborg found that the importer failed to qualify for duty free treatment under HTSUS subheading 9801.00.20 when "Skaraborg ha[d] not presented one iota of evidence that duty was paid on the subject merchandise at the time of previous importation."  Skaraborg, 22 CIT at 417.  Plaintiff argues that the Receiving Journal documents (Exhibit K) "are self-authenticating and show the date and place of original importation."  Pl.'s Opp'n and Reply at 25.  The court has examined this Receiving Journal document and observes that the document fails to show clearly the date of first importation, that duties were paid upon first importation, that the goods were exported to Canada, were held in a warehouse without increasing in value or changing condition, and reimported back to the United States for or by SGS.  The Receiving Journal appears to be a lengthy printed spreadsheet containing codes and numbers, with headings such as, "Receiving Number, Shipment No, PO No, Style/Color, Whse, Bin, Receiving Date, LC No, UM, Qty To Receive, Qty Received, Cancel B/O, Price, Extension."  See generally Receiving Journal.  Plaintiff's evidence fails to demonstrate to the court that the subject merchandise meet the requirements of HTSUS subheading 9801.00.20.

As noted earlier, a party moving for summary judgment must make a sufficient showing to establish the existence of an element essential to that party's case.  Celotex, 477 U.S. at 322; XY, LLC, 890 F.3d at 1292.  Here, Plaintiff failed to provide sufficient proof that the subject merchandise had been imported, exported, and reimported by or for SGS.  The court concludes that Plaintiff failed to prove the fourth essential element required under HTSUS subheading 9801.00.20.

In summary, Plaintiff has not proven any of the necessary requirements for duty-free treatment under HTSUS subheading 9801.00.20. Plaintiff failed to make a sufficient showing to establish that three of the essential elements of HTSUS subheading 9801.00.20 have been satisfied, and at best there are genuine issues of disputed material fact with respect to the essential element of export under a similar use agreement. A party's failure to make a sufficient showing on even one essential element is cause for the granting of summary judgment against the movant. Celotex, 477 U.S. at 322–23; XY, LLC, 890 F.3d at 1292. The court recognizes, in addition, that "one of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses," Celotex, 477 U.S. at 323–24; Minkin v. Gibbons, P.C., 680 F.3d 1341, 1351 (Fed. Cir. 2012) (citing Celotex). Because Plaintiff has proven none of the essential elements of HTSUS subheading 9801.00.20, the court holds that Plaintiff's subject merchandise are not entitled to duty-free treatment and denies Plaintiff's motion for summary judgment.

### III.    HTSUS Chapters 61 to 63

The next inquiry concerns whether Customs classified Plaintiff's merchandise correctly. Jarvis Clark Co., 733 F.2d at 878. According to Plaintiff, SGS' merchandise were classified "under various HTSUS provisions of Chapters 61 through 63 and assessed duties thereon at the Column 1 rates." Pl.'s Mem. at 1. Plaintiff indicated to the court that it does not challenge Customs' classification other than the denial of duty-free treatment under HTSUS subheading 9801.00.20. Conference Call with the Court, held by the Court of International Trade (July 20, 2020). The court concludes, therefore, that Customs classified Plaintiff's imported swimwear correctly under HTSUS Chapters 61 to 63.

## CONCLUSION

For the foregoing reasons, the court holds that Customs correctly classified the subject merchandise under Chapters 61 to 63, and that Plaintiff's subject merchandise are not entitled to duty-free treatment as a matter of law under HTSUS subheading 9801.00.20.  The court denies Plaintiff's motion for summary judgment.  The court sustains Customs' decision to deny duty-free treatment to Plaintiff under HTSUS subheading 9801.00.20 and grants Defendant's cross-motion for summary judgment.  Judgment will be entered accordingly.

      /s/ Jennifer Choe-Groves  
Jennifer Choe-Groves, Judge

Dated:   August 7, 2020  
       New York, New York